880 F.2d 694
 19 Bankr.Ct.Dec. 997, Bankr. L. Rep. P 72,955
 In re A.H. ROBINS COMPANY, INCORPORATED, Debtor. (Eight Cases.)
Rosemary MENARD-SANFORD; Karen Valenzuela; Constance
Miller Engelsberg; Nancy Lauri Adams; Carolyn
Harris, Claimants-Appellants,
v.
Ralph R. MABEY; The Official Committee of Equity Security
Holders; The Official Unsecured Creditors Committee of A.H.
Robins Company, Incorporated; Stanley K. Joynes, III, Legal
Representative of the Future Tort Claimants of A.H. Robins
Company, Incorporated, Parties-in-interest,
A.H. Robins Company, Incorporated, Debtor-Appellee.
Donna OBERG, et al., Claimants-Appellants,
v.
The OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS; The
Official Unsecured Creditors Committee of A.H. Robins
Company, Incorporated; Stanley K. Joynes, III, Legal
Representative of the Future Tort Claimants of A.H. Robins
Company, Incorporated, Parties-in-interest,
A.H. Robins Company, Incorporated, Debtor-Appellee.
Albert L. SIVLEY, Claimant-Appellant,
v.
The OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS; The
Official Unsecured Creditors Committee of A.H. Robins
Company, Incorporated; Ralph R. Mabey; Stanley K. Joynes,
III, Legal Representative of the Future Tort Claimants of
A.H. Robins Company, Incorporated, Parties-in-interest,
A.H. Robins Company, Incorporated, Debtor-Appellee.
Diana BROSCO; Catherine Crawford; Mary Fischer, et al.,
Claimants-Appellants,
v.
The OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS; The
Official Unsecured Creditors Committee of A.H. Robins
Company, Incorporated; Ralph R. Mabey; Stanley K. Joynes,
III, Legal Representative of the Future Tort Claimants of
A.H. Robins Company, Incorporated, Parties-in-interest,
A.H. Robins Company, Incorporated, Debtor-Appellee.
Lynn SCOTT; Carol Lopez, et al., Claimants-Appellants,
v.
The OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS; The
Official Unsecured Creditors Committee of A.H. Robins
Company, Incorporated; Ralph R. Mabey; Stanley K. Joynes,
III, Legal Representative of the Future Tort Claimants of
A.H. Robins Company, Incorporated, Parties-in-interest,
A.H. Robins Company, Incorporated, Debtor-Appellee.
Elaine CUMLEY; Laura Jones; Jean Abad, et al., Claimants-Appellants,
v.
The OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS; The
Official Unsecured Creditors Committee of A.H. Robins
Company, Incorporated; Ralph R. Mabey; Stanley K. Joynes,
III, Legal Representative of the Future Tort Claimants of
A.H. Robins Company, Incorporated, Parties-in-interest,
A.H. Robins Company, Incorporated, Debtor-Appellee.
Alexia ANDERSON, et al., Claimant-Appellant,
v.
Stanley K. JOYNES, III, Legal Representative of the Future
Tort Claimants of A.H. Robins Company, Incorporated; The
Official Committee of Equity Security Holders; The Official
Unsecured Creditors Committee of A.H. Robins Company,
Incorporated; Ralph R. Mabey, Parties-in-interest,
A.H. Robins Company, Incorporated, Debtor-Appellee.
Alexia ANDERSON, et al., Claimant-Appellant,
v.
The OFFICIAL UNSECURED CREDITORS COMMITTEE OF A.H. ROBINS
COMPANY, INCORPORATED; The Official Committee of Equity
Security Holders; Ralph R. Mabey; Stanley K. Joynes, III,
Legal Representative of the Future Tort Claimants of A.H.
Robins Company, Incorporated, Parties-in-interest,
A.H. Robins Company, Incorporated, Debtor-Appellee.
 Nos. 88-1750, 88-1754, 88-1756, 88-1758 to 88-1760, 88-1763
and 88-3602.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1988.
Decided June 16, 1989.
 
 Alan B. Morrison (Linda Donaldson, Public Citizen Litigation Group, Washington, D.C., on brief), for claimants-appellants.
 James Crawford Roberts (James S. Crockett, Jr., Mays & Valentine, Richmond, Va., Dennis J. Drebsky, Alesia Ranney-Marinelli, Kirk C. Loos, Skadden, Arps, Slate, Meagher & Flom, New York City, Ralph D. Pittle, Medical Legal Consultants of Washington, Seattle, Wash., John T. Baker, Bragg & Dubofsky, Denver, Colo., Joseph McDowell, Ill, Cullity, Kelley & McDowell, Manchester, N.H., W. Bradley Post, Post, Syrios & Bradshaw, Wichita, Kan., Frederic A. Bremseth, Doshan, Lord & Bremseth, Wayzata, Minn., Murray Drabkin, Cadwalader, Wickersham & Taft, Washington, D.C., Harold S. Novikoff, Wachtell, Lipton, Rosen & Katz, New York City, Henri E. Norris, Stanley K. Joynes, III, Rilee, Cantor, Arkema & Edmonds, Richmond, Va., Robert M. Miller, Berlack, Israels & Liberman, New York City, John S. Kinzey, Jr., Steven J. McCardell, Leboeuf, Lamb, Leiby & MaCrae, Salt Lake City, Utah, on brief), for debtor-appellee.
 Before RUSSELL, WIDENER, and CHAPMAN, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 On July 26, 1988, the bankruptcy court and the district court jointly confirmed the "Sixth Amended and Restated Plan of Reorganization" (the Plan) submitted by A.H. Robins Company, Inc. (Robins). In Re A.H. Robins Co. Inc., 88 B.R. 742 (E.D.Va.1988). Rosemary Menard-Sanford and certain other personal injury claimants, who voted against the Plan, appeal. They challenge the district court's approval of the disclosure statement, the district court's use of a one claimant one vote voting procedure, the district court's feasibility finding, and a certain injunction found in the Plan. We affirm.
 
 
 2
 On August 21, 1985, Robins filed a petition for reorganization relief under Chapter 11 of the Bankruptcy Code. For an explanation of the details surrounding Robins' bankruptcy and some of the resulting litigation, see the district court's opinion in In Re A.H. Robins Co., Inc., 88 B.R. 742 (E.D.Va.1988), and our other published opinions regarding this bankruptcy.[1]
 
 
 3
 On April 1, 1988, the district court approved the "Sixth Amended and Restated Disclosure Statement". The appellants argue that the disclosure statement does not contain adequate information. 11 U.S.C. Sec. 1125(b) requires that before solicitation of approval or disagreement of a plan of reorganization the disclosure statement must contain "adequate information" and be approved by the court. 11 U.S.C. Sec. 1125(a)(1) defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." The determination of whether the disclosure statement has adequate information is made on a case by case basis and is largely within the discretion of the bankruptcy court. In the Matter of Texas Extrusion Corp., 844 F.2d 1142, 1157 (5th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988). The challenged disclosure statement began its 261 pages of information with a thorough summary of the complex plan in terms that almost anyone could understand. It explained, among much more, the amount to be put into trust and made available for the payment of claims, the various estimates of how much money was required, a warning that the funds furnished to pay the estimates might not be enough to pay all claims in full, the sources of funding, an explanation of the various funding provisions which depended on the outcome of various appeals, how claims would be handled, the four options for processing claims and the background of the case. The disclosure statement continued with a discussion of the Robins company, the Dalkon Shield, various litigation regarding the Dalkon Shield, the reorganization, the proposed merger with American Home Products Corporation (AHP), the historical stock values of both AHP and Robins, and federal income tax consequences. The final part of the disclosure statement contains actual copies of the Plan, the Claimants Trust Agreement, the Other Claimants Trust Agreement, the Claims Resolution Facility, the Merger Agreement, Aetna's additional insurance policy, AHP's Annual Report, the Liquidation Analysis and biographies of the proposed Trustees.
 
 
 4
 The appellants contend that the disclosure statement is misleading because it contains a statement that in order to approve the Plan the district court must make a finding that the Plan contains enough money to satisfy all claims in full. They point out that in reality there may not be enough money to cover all claims. The disclosure statement, however, makes that clear to the claimants. It states that "if the Court's estimate turns out to be too low, Robins will not have to make any more money available to pay claims. In addition, the Plan would generally take away your right to recover for Dalkon Shield injuries against any other parties." The disclosure statement later repeats that thought in explicit terms: "[e]stimation is not an exact science. The money available to pay Dalkon Shield claims may prove to be more or less than the actual value of such claims. If the estimation decision underestimated the value of the claims, there may not be enough money for the Claimants Trust to pay all claims in full." Thus, we think appellants' contention is without merit.
 
 
 5
 The appellants' principal challenge to the disclosure statement, however, is that it is inadequate because it does not contain ranges of recovery for claimants with specified injuries. The disclosure statement notes that "[t]here is no certain way to predict the amount that you could receive under option 3. Each claim is different. Factors that affect the value of a claim include the nature of the injury, the medical evidence available to prove the injury, the medical evidence to prove Dalkon Shield use, the presence of other causes of your injury, how long ago you were injured, and what steps you took to enforce your legal rights after your injury became apparent." There is no requirement in case law or statute that a disclosure statement estimate the value of specific unliquidated tort claims. In fact, with so many various unliquidated personal injury claims which vary so much in the extent and nature of injury, medical evidence and causation factors, any specific estimates may well have been more confusing than helpful and certainly would be more calculated to mislead. Given the quantity and quality of the information in the disclosure statement we can not say that the district court abused its discretion in finding that it contained "adequate information."
 
 
 6
 The appellants next challenge the legality of the voting procedure used to confirm the Plan. The difficulty surrounding the voting procedure resulted from the 195,000 unliquidated claims for personal injuries (Dalkon Shield Claims). The controlling legal provisions for the reorganization include 11 U.S.C. Sec. 1126(a) which provides that a "holder of a claim or interest allowed under section 502 of this title" is entitled to vote on the acceptance of a plan. 11 U.S.C. Sec. 502(a) provides that a claim filed "is deemed allowed unless a party in interest" objects. Robins objected to all the Dalkon Shield Claims. B.R. 3018(a) provides that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." The district court, after notice and a hearing, ordered that, for purposes of voting, each Dalkon Shield Claim was estimated and allowed to be equal. It found, fully supported by the record, that any attempt to evaluate each of the 195,000 individual claims for voting purposes would cause intolerable delay. The challenge to the voting procedure relies on 11 U.S.C. Sec. 1126(c) which requires that for a plan to be approved by a class the creditors "that hold at least two-thirds in amount and more than one-half in number" accept the plan. The argument is that Sec. 1126(c) requires use of a weighted voting method which estimates the value of the claims and gives larger claims more votes.
 
 
 7
 We do not decide whether the district court's voting procedure violated Sec. 1126(c) because, in view of the outcome of the vote, the challenged procedure was at most harmless error. 139,605 claimants voted. Of that 131,761 (94.38%) voted in favor of the Plan. In Kane v. Johns-Manville Corp., 843 F.2d 636, 641-647 (2d Cir.1988),[2] the district court, faced with 52,440 unliquidated personal injury claims, assigned each claim the value of one dollar for voting purposes. 95.8% of those claims voted to approve the plan. The Second Circuit in reviewing the decision did not decide whether the equal voting plan was error and decided instead that the alleged irregularities were at most harmless error. Given that 94.38% of the Dalkon Shield Claimants voted for the Plan, we hold that, at most, harmless error was committed.[3]
 
 
 8
 Appellants' next point on appeal is that the district court erred in finding that the Plan complied with 11 U.S.C. Sec. 1129(a)(7)(A)(ii) which requires that an impaired class of claims such as the Dalkon Shield claimants must "receive ... under the Plan ... property of a value ... that is not less than the amount that ... [they would] receive ... if the debtor were liquidated under Chapter 7" and Sec. 1129(a)(11) which requires that confirmation is not likely to be followed by liquidation or the need for further reorganization. This latter is called the feasibility requirement.
 
 
 9
 Both such complaints are based on the "same source: the failure of the district court to break out the components of the $2.475 billion figure." The argument is that since the figure was not broken down, if it turned out to be too low, then the Plan would not be feasible because it could not pay all the claimants in full, which, as the appellants note, is an assumption of the Plan and the disclosure statement. The appellants thus complain about the same fact again, except in slightly different context. In all events, we think there is no merit to the claim, but that the care the district court took in arriving at its estimate deserves mention.
 
 
 10
 The challenged findings are based on an estimation process that the district court undertook as a result of our decision in A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 1013 (4th Cir.1986), cert. denied 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). In Piccinin, we stated that due to the large number of unliquidated claims that if each claim was tried the process itself "would likely consume all the assets of the debtor." Id. We suggested that the bankruptcy court "arrive at a fair estimation of the value of all the claims." Id. To assist in the estimation process, the district court appointed Professor Francis E. McGovern, who was familiar with such matters, as the court's expert to develop a data base regarding Dalkon Shield Claims. The Dalkon Shield Claimant's Committee, the Unsecured Creditor's Committee, the Future Claimant's Representative, the Equity Security Holder's Committee, Robins and Aetna all had experts to assist Professor McGovern. The data base included the results of a two page "Dalkon Shield Questionnaire and Claim Form" from more than 195,000 claimants. It also contained roughly 6,000 responses to a fifty page, "McGovern Survey Questionnaire" and medical records from a random sample of 7,500 claimants. The data collection process lasted more than a year and a half. Each of the experts hired by the various parties used the basic data in various ways to arrive at an estimation.
 
 
 11
 The district court conducted an estimation hearing from November 5, 1987 to November 11, 1987. At the hearing the parties' various experts testified. The district court considered that the testimony of the various experts estimated the claims as follows: Robins'--.8 to 1.3 billion, Equity Security Holders'--1.03 billion, Unsecured Creditors'--1.54 billion, Aetna's'--2.2 to 2.5 billion, and the Dalkon Shield Claimants'--4.2 to 7 billion. The district court decided that the proper estimate was 2.475 billion.[4]
 
 
 12
 At this point it is well to relate somewhat more fully the procedure used in arriving at the estimate found by the district court. As the district court noted, the testimony as to the estimated recovery value of the Dalkon Shield claims ranged from 600 million to 7 billion dollars. The testimony with respect to the 7 billion dollar figure, however, was not credited by the court.
 
 
 13
 Professor McGovern was assisted by the experts mentioned representing each of the interests involved in this case, and the procedural steps which were taken were all done by consensus among the experts representing all of the interests, so that the conclusions which the various experts drew from the evidence or the findings of the court from the evidence were the only things left open to exception.
 
 
 14
 As has been previously mentioned from time to time in the reports of these cases, the district court entered a bar date on claims and prescribed a very informal method of advising the court that a claim was being filed. The bar date of course limited the potential claimants. From these potential claimants, there were eliminated, by standard statistical and analytical methods, about one-third of the initial claims which had been filed. A detailed analysis of those claims not eliminated was performed by sending the detailed questionnaire previously mentioned to a randomly selected sample of several thousand of the claims remaining. The questionnaire asked for information, which, in the most general sense, was received back, concerning the insertion of the Dalkon Shield in the claimant and the nature of the claimant's injuries, including verification by way of medical records where possible.
 
 
 15
 A detailed analysis of all of the responses was then performed by the expert witnesses who testified in the case. A good example of competent testimony was that of Dr. Francine F. Rabinovitz, who testified on behalf of Aetna. We illustrate with her testimony because her conclusions more nearly match the conclusions of the district court than any other single witness offered. She took the returned questionnaires as a representative sample and weeded out those, for example, with no medical proof of use of the Dalkon Shield. As a further example, she classified the claims into those with and without complications and the nature of the injuries claimed. She took a further random sample of the claims as she had divided them up and got three Aetna claims adjusters who had been experienced in the actual adjustment of Dalkon Shield claims and instructed those adjusters to set a value on a sample of the claims she referred to them, considering that there was liability, so the only thing the adjusters had to consider in setting a value on a claim was the nature of the injury and of course the proof required and the attendant expenses. The adjusters were instructed not to place a low estimate on the claims. Dr. Rabinovitz, by using this method, drew the conclusion that the compensation necessary, assuming that documentation that use of the Dalkon Shield were a prerequisite, would be in excess of 1.9 billion dollars, and, assuming that documentation would not be a prerequisite, a sum in excess of 2.4 billion dollars. To these sums, she would have added modest payments to all active claimants, whatever the merit of such claims, and 50 million dollars as a reserve against future injuries, which made her figures for documented injuries at slightly more than 2.0 billion dollars and for undocumented injuries slightly more than 2.5 billion dollars. Dr. Rabinovitz further concluded that she thought there might be a considerable reduction from disallowance of claims and that she would reasonably anticipate the total indemnity of the obligation to be 2.2 to 2.3 billion dollars. That some reduction is not unreasonable is illustrated by a remark we have come across in the record that one claimant apparently said she took two Dalkon Shields a day.
 
 
 16
 From our brief recital of a small part of the evidence before the district court, we see that its finding of 2.475 billion dollars as the estimate to include all Dalkon Shield claims is not clearly erroneous under Rule 8013. Indeed, we think the district court would have been quite justified in accepting Dr. Rabinovitz' testimony, so appellants may not complain about the district court's arrival at a somewhat higher figure.
 
 
 17
 Finally, the appellants challenge as without the power of the bankruptcy court the portion of the Plan which requires the injunction of suits that have connection to the Dalkon Shield, against certain entities other than Robins. Robins argues that the injunction is a proper exercise of the district court's power to channel claims to a specific res or alternately that the injunction is proper because 94.38% of the claimants voted for the Plan and thereby consented to the injunction. We affirm, but our reasoning differs somewhat from that of Robins, although its position, of course, should enter into consideration. The suits in question which some of the appellants wish to bring are against Robins' directors, Robins' and Aetna's attorneys, and Aetna, seeking to hold them as joint tortfeasors with Robins for Dalkon Shield injuries.
 
 
 18
 We begin our discussion by considering the impact of our decision in In Re: A.H. Robins Company Inc., 88-1755(L) (Breland settlement), decided this date, on this challenge to the Plan's injunction. In Breland, we affirmed the district court's certification of a mandatory non-opt-out class for members of class A and a class which allows an opt-out for compensatory damages for members of class B. Class A is defined as those Dalkon Shield claimants who met the filing deadlines of the district court and therefore have a non-subordinated claim against the trust fund set up for the claimants in the Robins' reorganization. Class B is defined as those Dalkon Shield claimants who did not meet the filing deadline or like procedural requirements and are therefore not eligible for a non-subordinated recovery from the trust fund for reasons not related to the abstract merits of the claims. The Breland settlement, however, provided all class B claimants with a second chance to pursue their Dalkon Shield claims by staying in the class and applying to the Claims Resolution Facility.[5] For class B members the merits of their Dalkon Shield claims would be determined in the same method as is in place to determine class A members' claims except they would have no right to a jury trial. Their claims would be paid by the two Outlier policies issued by Aetna which provide for $100,000,000 to pay such claims.[6] No party challenges the adequacy of the Outlier policies to pay the class B claims. We therefore are entitled to and do assume that the claims of all class B claimants who wish to have the merits and amount of their claims ascertained by the Claims Resolution Facility will be fully satisfied. However, the Breland settlement, in conjunction with the Plan, did not force the class B claimants who chose to opt-out to stay within the settlement. They could elect to forgo the benefits of the settlement and retain their right to sue Aetna and to sue medical providers for malpractice.[7] In Breland, we also approved the class action settlement, which expressly bars the members of class A and the members of class B who did not opt-out from further prosecuting their Dalkon Shield claims other than pursuant to the terms of the settlement. Given this bar from pursuing compensation for their Dalkon Shield injuries, other than pursuant to the order, the injunction complained of has no real effect on the rights of members of class A and the members of class B who have not exercised their right to opt-out.
 
 
 19
 The Plan's injunction, therefore, only has real impact upon members of Class B who have elected to opt-out of the Breland settlement. The injunction under sections 1.85 and 8.04 of the Plan prevents these claimants from suing all third parties other than "insurer[s]" (which includes Aetna) and claims based exclusively on medical malpractice. The class B members who have elected to opt-out, it is remembered, claim to have causes of action as joint tortfeasors with Robins against Robins' directors, Aetna, and law firms who represented both Robins and Aetna. A suit against any of the parties mentioned by the class B opt-out members would affect the bankruptcy reorganization in one way or another such as by way of indemnity or contribution. See A.H. Robins Co. Inc. v. Piccinin, 788 F.2d 994 (4th Cir.1986), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). And, in all events, provision for payment in full of all class B claimants has been made.
 
 
 20
 Bankruptcy courts are courts of equity. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984). 11 U.S.C. Sec. 105(a) gives a bankruptcy court the power to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title," and confers equitable powers upon the bankruptcy courts. In Matter of Old Orchard Inv. Co., 31 B.R. 599 (W.D.Mich.1983). Given the impact of the proposed suits on the bankruptcy reorganization and the fact that the class B members who chose to opt-out could have had their claims fully satisfied by staying within the settlement, the bankruptcy court's equitable powers support the questioned injunction. We think the ancient but very much alive doctrine of marshalling of assets is analogous here. A creditor has no right to choose which of two funds will pay his claim. The bankruptcy court has the power to order a creditor who has two funds to satisfy his debt to resort to the fund that will not defeat other creditors. Columbia Bank for Cooperatives v. Lee, 368 F.2d 934, 939 (4th Cir.1966), cert. denied, 386 U.S. 992, 87 S.Ct. 1308, 18 L.Ed.2d 338 (1967); IV Minor's Institutes 1248 (1883). Here, the carefully designed reorganization of Robins, in conjunction with the settlement in Breland, provided for satisfaction of the class B claimants. However, some chose to opt-out of the settlement in order to pursue recovery for their injuries from Aetna or from medical providers for malpractice. It is essential to the reorganization that these opt-out plaintiffs either resort to the source of funds provided for them in the Plan and Breland settlement or not be permitted to interfere with the reorganization and thus with all the other creditors. Since they have chosen opt-out rather than payment in full, they may have no complaint about a restriction placed on their ability to sue others. Permitting a suit by them in violation of the Plan is a defeat of the Plan and a resulting defeat of the other creditors. "Particularly since the insurance settlement/injunction arrangement was essential in this case to a workable reorganization, it falls within the bankruptcy court's equitable powers 'which traditionally have been invoked to the end that ... substance will not give way to form, that technical considerations will not prevent substantial justice." MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 94 (2nd Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988), quoting In re U.N.R. Industries, Inc., 725 F.2d 1111, 1119 (7th Cir.1984).
 
 
 21
 The appellants finally contend that 11 U.S.C. Sec. 524(e) prohibits the injunction. Section 524(e) states that "[e]xcept as provided in subsection (a)(3) of this section,[8] discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." Some courts have held that Sec. 524(e) and its predecessor, Sec. 16 of the 1898 Bankruptcy Act, results in the bankruptcy court having no power to discharge liabilities of a nondebtor pursuant to the consent of creditors as a part of a reorganization plan. See Underhill v. Royal, 769 F.2d 1426, 1432 (9th Cir.1985); Union Carbide Corp. v. Newboles, 686 F.2d 593 (7th Cir.1982). However, the Fifth Circuit has stated that "[a]lthough section 524 has generally been interpreted to preclude release of guarantors by a bankruptcy court, the statute does not by its specific words preclude the discharge of a guaranty when it has been accepted and confirmed as an integral part of reorganization." Republic Supply Co. v. Shoaf, 815 F.2d 1046, 1050 (5th Cir.1987).[9]
 
 
 22
 We find the language used by the Fifth Circuit persuasive. Whatever the result might be as to the application of Sec. 524(e) in other cases, we do not think that section must be literally applied in every case as a prohibition on the power of the bankruptcy courts, as appellants would have us apply it here. In this situation where the Plan was overwhelmingly approved, where the Plan in conjunction with insurance policies provided as a part of a plan of reorganization gives a second chance for even late claimants to recover where, nevertheless, some have chosen not to take part in the settlement in order to retain rights to sue certain other parties, and where the entire reorganization hinges on the debtor being free from indirect claims such as suits against parties who would have indemnity or contribution claims against the debtor, we do not construe Sec. 524(e) so that it limits the equitable power of the bankruptcy court to enjoin the questioned suits. We leave questions concerning cases in which Sec. 524(e) does apply for another day.
 
 
 23
 The orders of the district court appealed from are accordingly
 
 
 24
 AFFIRMED.
 
 
 25
 *ADDENDUM
APPEAL NUMBER APPELLANT DALKON SHIELD NUMBER
881750 Rosemary MenardSanford 82114
 Karen Velenzuela 82207
 Constance Miller Engelsberg 82142
 Nancy Lauri Adams 82174
 Carolyn Harris 303631
881754 Mary Albert 252684
 Carol Angus 215751
 Judith Beaule 62242
 Janis Belcher 237565
 Daniel Belcher 237566
 Karen Belcher 237564
 David Belcher 243035
 Melanie Bennett 183837
 Nancy Benson 191191
 Jean Boeckler 122207
 John Boeckler 122208
 Janet Bruce 296254
 Melody Cannon 228522
 Barbara L. Carr 20475
 David W. Carr 244903
 Helen Carty 78400
 Sandra Cassier 7647
 Patrick Cassier 7646
 Victoria Charnock 228521
 Ellen Chodes 42705
 Elizabeth Cote 26935
 Brenda Davis 111886
 Marion DuFord 78493
 Deborah Fallon 80309
 John Fallon 80310
 Dawn Gebo 7306
 Janet Gregory 79226
 Frank Gregory 79225
 Sarah E. Haskell 78399
 Pamela Hockenhull 78909
 Patricia Johnson 78581
 Mary E. Jordan 291790
 April WeeksKorn 78397
 Leonard Korn 78398
 Debora Lamont 96144
 Beverly McClure 80313
 Katherine Maher 19424
 Elaine Nizza 228523
 Donna Oberg 77966
 Diane Pinard 7113
 Jeanne Robey 237567
 Paul Robey 237568
 Pamela Saxby 78580
 Shellie Shapiro 78583
 Howard Shapiro 78582
 Sharon Lee Spern 187651
 Rebecca Steinbach 281041
 Jeannette Sweet 85890
 Beverly Tonkin 184469
 Donna Tshanakas 222583
 Nicholas Tshanakas 222584
 Daphne Whitmore 78910
 Linda Bisson 172492
 Anne Soucy 286513
 Sally Adams 225908
 Randy Adams 225886
 Charlotte Allen 227324
 Charles Allen 225896
 Jan Allen 225897
 Barbara Bill Klinger 225899
 Linda Brust 225323
 Virginia Bryan Roberts 225901
 Gwendolyn E. Buettner 70274
 Carolyn Campbell 225900
 Lynn Crosby 225902
 William Franklin Crosby 233041
 Mary Kathryn Deemer 235677
 John Deemer 225885
 Donna Faremouth 260787
 Charles Faremouth 260788
 Cindy Franco 225884
 Fred Franco 231644
 Elena Friedman 225893
 Darleene L. Frink 226609
 Kenneth Frink 225964
 Diane Goshorn 113174
 Christiane J. Guignard 219368
 Linda Harre 225883
 William Harre 225894
 June Ellen Harris 225895
 Carol Harterink 225903
 Anton Harterink 225904
 Rosanne Heard 225905
 Jimmie Dale Heard 225906
 Atha Henderson 225907
 Jill Campion Huff 233339
 Pamela Johnson 7353
 Ted Johnson 7356
 Wanda Lancaster 6020
 Deborah Jean Lenzi 225485
 Betty Leobold 225486
 William D. Leobold 235694
 Susan Lippner 225890
 Robert Lippner 225889
 Victoria L. McCord 225888
 Cheryl McFarland 192508
 Dayna McKendree 225887
 Diane Mance Zywotko 225892
 Carol Mitchell 225891
 Susan Nehrig Cole 46096
 Paul Nehrig 46097
 Deloris A. Nicolaou 255933
 Sherry Peavy 225322
 Kenneth Peavy 225488
 Flora Poe 109594
 Brenda Reilly 225489
 Gerald Reilly 225490
 Patricia Scolaro 225491
 Edward Scolaro 235693
 Wanda Joe Selvanik 225492
 Michael Selvanik 225487
 Janice Denise Simmons 7355
 Merrick Simmons 7354
 Martha E. Sims 225483
 Eslyn South 189220
 Tracy Staneart 176376
 Debra Renee Thompson 225321
 Denise B. Wax 225946
 Dan Wax 234731
 Rachael O. Thompson 200369
 Edwin L. Wilbur 202442
 Sharon Malloy Wilber 201016
 Harold E. Kerkhoff, Jr. 200370
 Robert F. Grant, Deceased 200373
 Robert W. Adams 200368
 Gillian L. Adams 200367
 Mr. R.S. Shaw 285422
 Blanche M. Shaw 202439
 Donna M. Kerkhoff 200375
 Kathleen A. Denise 62658
 Jim H. James 200366
 
 
 26
 Beatrice D. Sewell 200374
 Kenneth R. Livingston 200883
 Gloria W. Livingston 200372
 Harvey H. Friedman 200371
 Arlene Whitaker James 200365
 Phyllis B. Puckett 225059
 Rhalda S. Friedman 202440
 Joyce F. Grant 202441
 Barbara A. Purvis 202438
881756 Albert Sivley 156549
881758 Louise Anderson 40014
 Jan Beck 40021
 Mary Jo Bennett 97533
 Sandra Bescheinen 314579
 Patricia Bonn 40029
 Diane Brosco 40038
 Karla Clark 866239
 Catherine Crawford 40065
 Silvia Crockett 40066
 Dee Dahl 269915
 Katheryn Duryea 192464
 Mickie Engel 179358
 Mary Fischer 40095
 Arlene Ford (Robinson) 100767
 Sandra Fritz 33463
 Susan Geisler 236132
 Nancy Gossan 275731
 Constance Halverson 64890
 Lois Hansel 15085
 Rachel Jones 183223
 Lisa Kerr 66317
 Rosemary Lambert 174880
 Nora Manning 40169
 Carolie Martin 40172
 Lee McDaniel 40183
 Eleanor Meyer 236151
 Rosemary Nelson 66584
 Charlotte Pool 66605
 Faye Schultz 14448
 Sharon Scott 269922
 Ginger Shirley 66666
 Yvonne Spicer 67003
 Lyndalou Steckler 66566
 Shelly Stisser 66682
 Carole Torres 66478
 Suzanne Walfoort 304062
 Mary Ann Watrous
 Diane Zapata 153920
881759 Lynn Scott
 Carol Lopez
881760 Elaine Cumley 207022
 Jean Abad 268523
 Eileen Ackerman 82175
 Linda Adamecz 232928
 Donna Albright 268416
 Christine Alfaros 82173
 Cathy Allen 82172
 Paulette Allen 269145
 Scott Allen 268521
 Nancy Alotis 269161
 Diane Anderson 268414
 Susan Anderson 82171
 Douglas Anderson 268519
 Anne Angelou 82170
 Dimitris Angelou 268516
 Cynthia Apple 275727
 Ann Frances Aspon 82243
 Beverly Annette Back 203008
 Deborah Barbour Eaton 82235
 Beret Barnes 82169
 Dixie Barnes 203011
 Beverly BartleyMustin 82168
 Jane Beedle 82167
 Kathy Bennett 275752
 Edith (Deedi) Berde 275753
 Janice Berg 268481
 Hanna Berkow 87077
 Birohnie Blair Dowdell 202946
 Sandra Bliven Budd 82166
 Jennell Boote 82165
 Stessi Boyd 275736
 Jean Brewer 82164
 Geraldine Broeffle 82163
 Carolyn Brown 107919
 Marguerite Bryson 203023
 Sandra Bucsit 268413
 Veronica BurnsPeterson 82162
 Norma Cabrera Reid 82161
 Sylvia Cameron 82153
 Chris Campbell 203020
 Cynthia Campbell 269162
 Linda Carlsen 203010
 Jennifer Cheney 268475
 Judy Clark 82154
 Karen Clement 268518
 Karl Clement 268509
 Myra Cole 82155
 Kathy Collin 32966
 Arthur Collin 268503
 Patricia Conley 82156
 Bonnie Cook 203019
 Sheryl Cooper 202980
 Dawn Covell 82210
 Dianna Crabb 82143
 Karen Crenshaw George 82144
 Michael Crenshaw 268506
 Linda Croskey 82146
 Kenneth Croskey, Sr. 268501
 Judith Danforth 269148
 Adis Daniels 271762
 Monica Davis 233127
 Becky Deeter 202989
 Maureen DeGaetano 91499
 Diane DeRooy 82148
 Christina DeWeese 82236
 Mary Ann Dizon Lancaster 203018
 Catherine D. Tomlinson 202979
 Janet Dowling 82149
 Larry Dowty
 Lorraine Dressel 203017
 Susan Duram 268471
 Susan Jane Durham 82139
 Leolynn DuVal 202982
 Christine Eager Leback 82140
 Cathi Eicher 203033
 Charlene Eitelberg 275737
 Monica Ellis 82141
 James Ellis 268498
 Danelia Fanello 82135
 Phyllis Fernandes 203039
 Edward Fernandes 268496
 Gloria Fields 120488
 Margaret Fithen 203012
 Cleo Fitzgerald 82132
 Gregory Fitzgerald 268494
 Marcia Fletcher 35024
 Julia Foss 268410
 Judith Fowe 82134
 Robert Fowe 268446
 Patricia Fox 268513
 Ronald Fox 268530
 Juanita Francis 82237
 Don Francis 268492
 Jackie Franck 229230
 Delilia Frank 82136
 Marie Gallegos 82137
 Pamela Garrett 268511
 Mary Jane Gassert 82138
 Rhonda Gateman Herman 268510
 Linda Gause 82121
 Kathryn Gillette 202985
 Catherine Gitchell 82123
 Louis Gitchell, Jr. 268491
 Christine Gitchell 200563
 Cathy Reiner Godwin 82122
 Cliff Godwin 268488
 Pamela Goldader 269147
 Judith Grafing 82124
 Richard Grafing 268487
 Alice Grimes 82125
 Mary Grubb 268463
 Tamara Guslander 82126
 Charles Guslander 268483
 Carol Hawkins 268461
 Ruby Haywood 82127
 Christen Hearn 82128
 Melvin Hearn 268482
 Eloise Hebert 268508
 Christine Henshaw 82129
 Gail Hertzler Buehler 203022
 George Buehler 268515
 Pam Heselgrave 199804
 Karin Hoffman 276494
 Gayle Holm 202995
 Joanne Huffman 268507
 David Huffman 268480
 David Huffman 200543
 Lori Inglis 151878
 Rose Anne Jacobs 4556
 Rhonda Jared 82130
 Cathy Jensen 82238
 Pam Jensen 82204
 Christy Johnson 82198
 Deborah Johnson 69841
 Dale Johnson 214683
 Karren Johnson 82199
 Linn Johnson 268478
 Elaine Jones Donovan 82200
 Helen Jones 203043
 L.C. Jones 268476
 Patricia Jordshaugen 203042
 Lucinda Karlic 82201
 Stefan Karlic 268470
 Donna Kirby 82188
 Clyde Kirby 268468
 Janice Knudsen 82208
 Ruth Korkowski 82186
 Shirlee Krumplemann 269164
 Maria Krzeszowski 203000
 Mieczyslaw Krzeszowski 275715
 Sandy Lasicka 82202
 Bonnie L. Wasserman 82203
 Janet LaWall 82195
 Winnie Sue Lee 82196
 Linda LeFebvre 202998
 Carmen Leuschner 268504
 Robert Leuschner 268466
 Molly Linderoth 82197
 Charlene Linvog 268505
 Dixie Llewellin 82190
 Dave Llewellin 268464
 Janna Gingras (fka London) 82191
 Linda Look 82192
 Sharron Loveall 228981
 Shannon Lowe 130082
 Kathy Lumsden 203041
 Nancy Lyon 82193
 Linda Magnuson 82118
 Carol Mahony 202994
 Cindy Mahugh 268457
 Barbara Maine 82119
 Margaret Mamon 82120
 Tony Mamon 268442
 Karen Manning 82108
 Debra Marcus 104289
 Kathy Mare 82110
 Margaret Maredza 82111
 Diane Strayer (fka Martin) 82112
 Jane Martin 82133
 Richard Martin 268441
 Shirley Martinez 268417
 Nina Mason 56672
 David Mason 268436
 Laine Jill McClellan 268412
 Sue McCracken 126795
 Veronica McCrearyOliver 82113
 Kenneth Oliver 268462
 Constance McDowell 268502
 Petra (Peggy) McIntyre 203024
 Karen Meola 202999
 David Meuli
 Jodi Miasnik 82116
 Stephanie Lieb Migdal 82117
 Gerald Migdal 268529
 Gwendolyn Miller Juleff 82184
 Rose Miller 178415
 Beverly Mills 82183
 Marla Mobley 82160
 Shelia Mohn 82182
 Valerie Moore 275747
 Maggie Morales 96003
 Gloria Morris 269154
 Lorena Mrachek 202986
 Kathleen MunroMcNeill 82181
 Richard MunroMcNeill 268528
 Debra Nelson 82180
 Victoria Nomikos Blair 82179
 Hazel Norbury 203163
 Jackie O'Ryan 82189
 Johnnie Clay Paradiso 203015
 Margaret Parent 116882
 Sarah Parrington 82178
 Rosalie Passarelli 82177
 Carmella Patterson 82176
 Samuel Patterson 268432
 Sue Peet 215683
 Christina Peterson 275765
 Christine Peterson 82239
 Walter Peterson 268430
 Shirley Peterson 145090
 Barbara Phair 269160
 Heidi Pierotti 82240
 Alberta Plate Franco 82242
 Pat Premel 268497
 Steve Premel 268429
 Susan Pupera 82231
 Deloris Ragazzo 202990
 Victoria Raider Romero 275760
 DiAnne Rainard 82233
 Marty Reeh 97855
 Deborah Rennick 268142
 Debra Porter Rettman 203027
 Peter Rettman 275758
 Eula Rials 82159
 Margaret Richards 88274
 June Richey 203028
 Lloyd Richey 275716
 Deja Robins 82234
 Valorie Robinson Jensen 82223
 Sandra Roose 19657
 Angela Rose 268493
 Crystal Rose 203003
 Sharon Rossmeier 82224
 Demetra Rouvas 82225
 Julie Ryan 82226
 Connie Samp 82158
 Donna Sanders 268490
 David Sanders 268426
 Susan Sasnett 82227
 Jay Sasnett 268424
 Deborah Brown Saxton 268448
 Lisa Schanz 82228
 Allahna Schriver 82229
 Sharon Seal 82157
 Dianne Seibold 82230
 Horst Seibold 268422
 Teresa Selfe 82217
 Eilene Sharp 82151
 Kathleen Shelby 82219
 Ruby Shumate 82220
 Donnell Shumate 268420
 Shirley Shumway 43185
 Michael Shumway 268525
 Sally Siddiqi 82221
 Donna Siler 82222
 Marilyn Skone 203014
 Wanda Slater 268489
 
 
 27
 Jacqueline Smith 82216
 Donald Smith 268418
 Kathleen Smith 268486
 Robert Smith 268474
 Judith Smith 82215
 Tim Smith 268415
 Deborah Snyders 82152
 Anke Spencer 268485
 Don Spencer 268437
 Colleen Still 227825
 Deborah Stoffel 82214
 Jackie Stone 141320
 Savana Swain 202997
 Clifford Swain 268435
 Renee Swanson 82194
 Carol Sycks 82213
 Robert Sycks 268434
 Kathy Syrdal 82212
 Phil Syrdal 268431
 Ann Tabasinske 89787
 Gary Tabasinske 7170
 Kay Tamura 82211
 Steven Tamura 268428
 Margaret Taplin 268445
 Deborah Tegelberg 202984
 Claudeen Tobiason 82205
 Jodi Tranter 203025
 Frank Tranter 268427
 Erma Turner 32831
 Kathryn Ulrich 268409
 Vicik Urias 82206
 Magic VanAusdal 268408
 Vicki Volkersz 82254
 Marilyn Waara 275726
 Elizabeth Walton Kilner 82253
 Teresa Ward 236256
 Kathleen Warren 82251
 Donald Warren 268524
 April Weber 82252
 Chriss Webster 21897
 Karolyn Webster 268443
 Gloria White 82250
 Donald White 268425
 Lynda Williams 82187
 Linda Lee Wilson Cashaw 82249
 Susan Wilson 203030
 Janet Lee Winston 203013
 Mary Winters 268484
 HazelJean Wolbert 202996
 Dyanna Wolcott 82247
 William Wolcott 268423
 Ardyth Wuori 82248
 Penny Wykes 82246
 Sherry York 82245
 Gary York 268421
 Carolyn Young 31271
 Diane Young 275763
 Linda Young 82244
 Joyce Zaborowski 82241
 Sgt. Daniel Zaborowski 268419
 Greg Ross 268526
881763 Alexia Anderson 225182
 Barbara Anderson 231938
 Philip Anderson 268170
 Paula C. Bannow 11228
 John Bannow 271718
 Diana R. Beard 10440
 Robert Davis Beard 271192
 Sherry Bergman 15385
 Charles Bergman 271992
 Marsha Brown 71237
 Jeannette Bulinski 15584
 Gregg Gundersen 272541
 Wendy R. Busch 10864
 Lillian Castillo 122920
 Elizabeth Chamberlayne 48517
 Carol Cooke 10446
 Donna Cornelisse 15383
 Denise Crowell 10865
 Mike Crowell 271721
 Jacki Dasso 10454
 John Thompson 271720
 Sharon Ebert 223890
 Dennis Ebert 271532
 Laura B. Emerson 16301
 Gary S. Emerson 263135
 Carol Evans 11339
 Dennis S. Evans 271538
 Melinda F. Evans 10448
 Hawley Roger Evans 272532
 Carla Magdanz Everett 15585
 Barbara Ferguson 10862
 Charles Ferguson 262197
 Nancy C. Franz 15382
 Roger A. Franz 258077
 Julia Bloch Frey 163423
 Janette S. Gamet McMahon 11344
 George McMahon 272764
 Mary C. Graham 15386
 Ronald Graham 274584
 Xenia Graves 11341
 Cheryl A. Gruse 11334
 Roberta Guildner 10501
 Ava Hamilton 11343
 Delmar Hamilton 262660
 Delores M. Haro 228508
 Lori Haugland 206197
 Mary R. Hein 16655
 William Hein 272766
 Janet Heitzmann 10449
 Mary Frances Hilko 243918
 Lucy Judson 10444
 Craig Alan Yeager 272765
 Betty Kenzel 10443
 Richard E. Kenzel 263118
 Judy Kurtz 10452
 Judith Lavezzi 6088
 Susanne Leuthauser 11337
 Truman Leuthauser 262311
 Harriet Elizabeth Mann 223977
 Sharon L. Mazotti 223979
 Daniel Mazotti 268168
 Sandra R. Merrill 10451
 Roy R. Merrill 262312
 Laurel Ruth Mifflin 255908
 John Mifflin 273601
 Nathan Mifflin 254594
 Sandra D. Miller 11342
 John K. Miller 268162
 Peggy Morgan 11336
 Barbara R. Nowak 10445
 Mary Ann Perkins 10447
 Russell Perkins 263117
 Ravonda L. Potter 10450
 Roger Jay Potter 271533
 Kathy Quinton 16300
 Judith Anne Ramsay 10442
 Charles E. Ramsay 271723
 Pamela S. Reiter 11340
 Peter Reiter 274587
 Ella Ruth Rogers 9295
 Elaine Rogers 16298
 Donis Rogers 265558
 Christine Seiffert 171920
 Stefanie Selden 9271
 Judy Sheppard 25992
 M. Lee Sheppard 268166
 Jessica A. Simkulet 11335
 Janet Singletary 16654
 Roger Singletary 268167
 Evelyn M. Snyder 16302
 Andrew Snyder 15387
 Marcia Steel 16303
 Mary Stewart 15387
 Charles D. Stewart 265520
 Karon Tiger 234904
 Thelma L. Tilman 236252
 Durcille Trolinger 206281
 Jo Susan Verspohl 13063
 Ronald Verspohl 272554
 Carol J. Waltz 16299
 Ronald F. Waltz 268165
 Kathleen A. Watson 199542
 Larry Watson 291814
 Abby Weinstein 166871
 Barry Weinstein 258076
 Diane West 10408
 Martha Whitehead 199551
 Marlyin Wilson 25436
 Vicki Woodard 10441
 Tom George 171536
 Deirdre J. Zietz 15384
 Leonard E. Zietz 260920
 Rebecca L. Adair 239633
 Gary A. Adair 239634
 Sharon C. Angel 145182
 Gene R. Angel 304529
 Katharine K. Beattie 106539
 Fareda E. Belcher 239629
 Floyd Belcher 106540
 Linda M. Black 239635
 William R. Black 239636
 Mary A. Bonner 37245
 Robert I. Bonner 239637
 Johnsie C. Brown 117778
 Joseph T. Brown, Jr. 326617
 Vicki L. Brown 106541
 Randy L. Brown 106542
 Juanita L. Brown 106543
 Shirley Mae Burroughs 106550
 Robert Burroughs 106551
 Beverley Davisson 106544
 William A. Davisson 106545
 Jason W. Davisson 106546
 Debra G. Dean 12776
 Mary Ann Evertson 106547
 Robert W. Evertson 106548
 Sandra L. Flynn 106549
 Joyce Frieders 106569
 Charles D. Frieders 106570
 Patricia Graber 269036
 Patricia J. Heuseveldt 239639
 Ronald W. Heuseveldt 239640
 Heather Hull 106571
 Kenneth L. Hull 106572
 Patty E. Hutton 106553
 Leon D. Hutton 106554
 Amy Marie Hutton 106552
 Charlotte S. James 269035
 Kay M. Kincade 243662
 Paul W. Kincade 243663
 Bonlyn G. Qulick 251829
 Anna Louise Luhman 106555
 Kersten Males 106575
 William Males 106576
 Roberta C. Martin 106573
 Keith A. Martin 106574
 Sarah E. McLeod Kirk 106556
 David C. McInnis 106557
 Billie Rae Mercer 106558
 Sandra J. Mertens 106559
 Ronald G. Mertens 106560
 Kay Diane Milligan 6205
 William D. Milligan 6206
 Betsy A. Munson 106577
 Judith A. Nichols 106561
 James R. Nichols 106562
 Kathleen K. Pope 106578
 Rita M. Raaf 106579
 Richard D. Raaf 106580
 Courtney L. Raaf 106581
 Elizabeth W. Rinehart 239641
 Richard R. Rinehart 239642
 Gaylene P. Schommer 106563
 John W. Schommer 106564
 Rachel H. Scott 106565
 David L. Scott 106566
 Janet L. Scott 106582
 Janice A. Sell 239643
 Steven K. Sell 239644
 Fay Annetta Smith 106583
 Rhonda J. Smith 212510
 Peggy A. Sneegas 239645
 Roger A. Sneegas 239646
 Rebecca J. Stafford 297307
 Sonja G. Sweek 106584
 Nancy J. Taylor 106567
 Mary Ann Thomas 106585
 Steven J. Thomas 106586
 Elizabeth E. Tomaszewicz 239648
 George R. Tomaszewicz 239649
 Patricia Ann Tronsgard 106568
 Catherine L. Wood 239630
 Joda D. Wright 239631
883602 Alexia Anderson 225182
 Barbara Anderson 231938
 Philip Anderson 268170
 Paula C. Bannow 11228
 John Bannow 271718
 Diana R. Beard 10440
 Robert Davis Beard 271192
 Sherry Bergman 15385
 Charles Bergman 271992
 Marsha Brown 71237
 Jeannette Bulinski 15584
 Gregg Gundersen 272541
 Wendy R. Busch 10864
 Lillian Castillo 122920
 Elizabeth Chamberlayne 48517
 Carol Cooke 10446
 Donna Cornelisse 15383
 Denise Crowell 10865
 Mike Crowell 271721
 Jacki Dasso 10454
 John Thompson 271720
 Sharon Ebert 223890
 Dennis Ebert 271532
 Laura B. Emerson 16301
 Gary S. Emerson 263135
 Carol Evans 11339
 Dennis S. Evans 271538
 Melinda F. Evans 10448
 Hawley Roger Evans 272532
 Carla Magdanz Everett 15585
 Barbara Ferguson 10862
 Charles Ferguson 262197
 Nancy C. Franz 15382
 
 
 28
 Roger A. Franz 258077
 Julia Bloch Frey 163423
 Janette S. Gamet McMahon 11344
 George McMahon 272764
 Mary C. Graham 15386
 Ronald Graham 274584
 Xenia Graves 11341
 Cheryl A. Gruse 11334
 Roberta Guildner 10501
 Ava Hamilton 11343
 Delmar Hamilton 262660
 Delores M. Haro 228508
 Lori Haugland 206197
 Mary R. Hein 16655
 William Hein 272766
 Janet Heitzmann 10449
 Mary Frances Hilko 243918
 Lucy Judson 10444
 Craig Alan Yeager 272765
 Betty Kenzel 10443
 Richard E. Kenzel 263118
 Judy Kurtz 10452
 Judith Lavezzi 6088
 Susanne Leuthauser 11337
 Truman Leuthauser 262311
 Harriet Elizabeth Mann 223977
 Sharon L. Mazotti 223979
 Daniel Mazotti 268168
 Sandra R. Merrill 10451
 Roy R. Merrill 262312
 Laurel Ruth Mifflin 255908
 John Mifflin 273601
 Nathan Mifflin 254594
 Sandra D. Miller 11342
 John K. Miller 268162
 Peggy Morgan 11336
 Barbara R. Nowak 10445
 Mary Ann Perkins 10447
 Russell Perkins 263117
 Ravonda L. Potter 10450
 Roger Jay Potter 271533
 Kathy Quinton 16300
 Judith Anne Ramsay 10442
 Charles E. Ramsay 271723
 Pamela S. Reiter 11340
 Peter Reiter 274587
 Ella Ruth Rogers 9295
 Elaine Rogers 16298
 Donis Rogers 265558
 Christine Seiffert 171920
 Stefanie Selden 9271
 Judy Sheppard 25992
 M. Lee Sheppard 268166
 Jessica A. Simkulet 11335
 Janet Singletary 16654
 Roger Singletary 268167
 Evelyn M. Snyder 16302
 Andrew Snyder 15387
 Marcia Steel 16303
 Mary Stewart 15387
 Charles D. Stewart 265520
 Karon Tiger 234904
 Thelma L. Tilman 236252
 Durcille Trolinger 206281
 Jo Susan Verspohl 13063
 Ronald Verspohl 272554
 Carol J. Waltz 16299
 Ronald F. Waltz 268165
 Kathleen A. Watson 199542
 Larry Watson 291814
 Abby Weinstein 166871
 Barry Weinstein 258076
 Diane West 10408
 Martha Whitehead 199551
 Marlyin Wilson 25436
 Vicki Woodard 10441
 Tom George 171536
 Deirdre J. Zietz 15384
 Leonard E. Zietz 260920
 Rebecca L. Adair 239633
 Gary A. Adair 239634
 Sharon C. Angel 145182
 Gene R. Angel 304529
 Katharine K. Beattie 106539
 Fareda E. Belcher 239629
 Floyd Belcher 106540
 Linda M. Black 239635
 William R. Black 239636
 Mary A. Bonner 37245
 Robert I. Bonner 239637
 Johnsie C. Brown 117778
 Joseph T. Brown, Jr. 326617
 Vicki L. Brown 106541
 Randy L. Brown 106542
 Juanita L. Brown 106543
 Shirley Mae Burroughs 106550
 Robert Burroughs 106551
 Beverley Davisson 106544
 William A. Davisson 106545
 Jason W. Davisson 106546
 Debra G. Dean 12776
 Mary Ann Evertson 106547
 Robert W. Evertson 106548
 Sandra L. Flynn 106549
 Joyce Frieders 106569
 Charles D. Frieders 106570
 Patricia Graber 269036
 Patricia J. Heuseveldt 239639
 Ronald W. Heuseveldt 239640
 Heather Hull 106571
 Kenneth L. Hull 106572
 Patty E. Hutton 106553
 Leon D. Hutton 106554
 Amy Marie Hutton 106552
 Charlotte S. James 269035
 Kay M. Kincade 243662
 Paul W. Kincade 243663
 Bonlyn G. Qulick 251829
 Anna Louise Luhman 106555
 Kersten Males 106575
 William Males 106576
 Roberta C. Martin 106573
 Keith A. Martin 106574
 Sarah E. McLeod Kirk 106556
 David C. McInnis 106557
 Billie Rae Mercer 106558
 Sandra J. Mertens 106559
 Ronald G. Mertens 106560
 Kay Diane Milligan 6205
 William D. Milligan 6206
 Betsy A. Munson 106577
 Judith A. Nichols 106561
 James R. Nichols 106562
 Kathleen K. Pope 106578
 Rita M. Raaf 106579
 Richard D. Raaf 106580
 Courtney L. Raaf 106581
 Elizabeth W. Rinehart 239641
 Richard R. Rinehart 239642
 Gaylene P. Schommer 106563
 John W. Schommer 106564
 Rachel H. Scott 106565
 David L. Scott 106566
 Janet L. Scott 106582
 Janice A. Sell 239643
 Steven K. Sell 239644
 Fay Annetta Smith 106583
 Rhonda J. Smith 212510
 Peggy A. Sneegas 239645
 Roger A. Sneegas 239646
 Rebecca J. Stafford 297307
 Sonja G. Sweek 106584
 Nancy J. Taylor 106567
 Mary Ann Thomas 106585
 Steven J. Thomas 106586
 Elizabeth E. Tomaszewicz 239648
 George R. Tomaszewicz 239649
 Patricia Ann Tronsgard 106568
 Catherine L. Wood 239630
 Joda D. Wright 239631
 
 
 
 [1]
 In Re A.H. Robins Co. Inc., 880 F.2d 769 (4th Cir.1989); In Re A.H. Robins Co. Inc., 88-1755(L) 880 F.2d 709 (Breland settlement) (heard Dec. 6, 1988) (4th Cir.1989); In Re A.H. Robins Co. Inc., 862 F.2d 1092 (4th Cir.1988); In Re A.H. Robins Co. Inc., 846 F.2d 267 (4th Cir.1988); Maressa v. A.H. Robins Co. Inc., 839 F.2d 220 (4th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 76, 102 L.Ed.2d 53 (1988); Grady v. A.H. Robins Co. Inc., 839 F.2d 198 (4th Cir.1988), cert dismissed, --- U.S. ----, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988); Official Committee of Equity Security Holders v. Mabey, 832 F.2d 299 (4th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988); Beard v. A.H. Robins Co. Inc., 828 F.2d 1029 (4th Cir.1987); In Re A.H. Robins Co. Inc., 828 F.2d 1023 (4th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1988); Committee of Dalkon Shield Claimants v. A.H. Robins Co. Inc., 828 F.2d 239 (4th Cir.1987); Van Arsdale v. Clemo, 825 F.2d 794 (4th Cir.1987); Vancouver Women's Health Soc. v. A.H. Robins Co. Inc., 820 F.2d 1359 (4th Cir.1987); In Re Beard, 811 F.2d 818 (4th Cir.1987); and A.H. Robins Co. Inc. v. Piccinin, 788 F.2d 994 (4th Cir.1986), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). See addendum for listing of parties and Dalkon Shield claim numbers
 
 
 [2]
 We have previously noted the "striking similarity both factually and on the legal issues" of the Robins and Johns-Manville cases. A.H. Robins Co. Inc. v. Piccinin, 788 F.2d 994, 1007 (4th Cir.1986), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986)
 
 
 [3]
 We are not persuaded by the argument that the 5.62% NO votes were from the claimants with the largest claims, that being necessary of course to make up more than one-third of the claims in amount. The argument goes that such claimants have the most to gain from a rejection of the Plan, but that proposition, we think, is not only supported by no evidence, it is not supported by logic, and is no more likely than the fact that the largest claimants have the most to lose by a rejection of the Plan. Indeed, it would seem that the latter is the more likely if one must choose between the two. Appellants take no exception to the findings of the district court that the liquidation value of the company is considerably less than its value in reorganization, and the part allocated to the claims of the Dalkon Shield claimants is considerably less, $2.5+ billion under the Plan as opposed to $1.6+ in liquidation. So, with a rejection of the Plan which resulted in liquidation, the largest claimants would be the biggest losers. We remain convinced, in view of the 94.38% affirmative vote, that had a weighted voting system been practicable and utilized, the required two-thirds in amount would have approved the Plan. It follows that the error, if any, is harmless
 
 
 [4]
 We note that the district court's figure was within the range of the second highest estimation--that of Dr. Francine F. Rabinovitz, the expert for Aetna. The district court repeatedly rejected the credibility of the expert for the Dalkon Shield Claimants, the only expert with a higher estimation than Dr. Rabinovitz
 
 
 [5]
 All claimants, both class A and B, are seeking to recover for injuries caused by use of the Dalkon Shield. The class B claimants were barred from non-subordinated recovery from the trust fund set up by the debtor generally because they failed to file in time. They turned to alternative defendants, which they allege are joint-tortfeasors, for recovery for their Dalkon Shield claims
 
 
 [6]
 In addition to the $100,000,000 total of the Outlier policies, if there is excess coverage under the $250,000,000 Primary Excess Policy, it becomes an excess layer policy to the Outlier policies. This, as well as the participation of class B claimants in any excess of the trust fund, provides possible additional layers of protection to the class B claimants. Since there is no challenge to the adequacy of the funds made available to class B claimants we do not address the legal or factual strength of their claims. The district court, in its order approving the Breland settlement, found the claims against Aetna to be weak both factually and legally
 
 
 [7]
 There are approximately 111,000 class B claims, and only 2,960 exercised their right to opt-out
 
 
 [8]
 Subsection (a)(3) deals with community property of spouses and is not applicable
 
 
 [9]
 The court did not decide the issue but assumed without deciding there was a jurisdictional question under Sec. 524 as to the authority of the bankruptcy court to release non-debtors. Republic Supply Co. v. Shoaf, 815 F.2d 1046, 1051 at n. 5. (5th Cir.1987)