In re A. H. ROBINS COMPANY,
INCORPORATED, Debtor.
(Three Cases.)

Alexia ANDERSON, et al.,
Claimants–Appellants,

Laura L. Fisher, on her own behalf and
on behalf of at least 10,000 Dalkon
Shield claimants, Intervenor,

v.

DALKON SHIELD CLAIMANTS TRUST,
Respondent–Appellee.

Alexandra KAHN, Claimant–Appellant,

Laura L. Fisher, on her own behalf and
on behalf of at least 10,000 Dalkon
Shield claimants, Intervenor,

v.

DALKON SHIELD CLAIMANTS TRUST,
Respondent–Appellee.

Debra AGAPITO, et al., Claimants–
Appellants,

Laura L. Fisher, on her own behalf and
on behalf of at least 10,000 Dalkon
Shield claimants, Intervenor,

v.

DALKON SHIELD CLAIMANTS TRUST,
Respondent–Appellee.

Nos. 91–1752 to 91–1754.

United States Court of Appeals,
Fourth Circuit.

Argued March 4, 1992.

Decided Dec. 14, 1994.

---

**ARGUED:** Alan B. Morrison, Public Citizen Litigation Group, Washington, DC, for appellants. Michael Albert Pretl, Pretl & Erwin, P.A., Baltimore, MD, for intervenor. Ralph Rampton Mabey, LeBoeuf, Lamb, Leiby & MacRae, Salt Lake City, UT, for appellee. **ON BRIEF:** Leslie A. Breuckner, Public Citizen Litigation Group, Washington, DC; Douglas E. Bragg, Bragg, Baker & Cederberg, P.C., Denver, CO; Bradley Post, Post, Syrios & Kinch, Wichita, KS, for appellants. H. Robert Erwin, Jr., Christyne L. Neff, Pretl & Erwin, P.A., Baltimore, MD, for intervenor. Mark W. Dykes, LeBoeuf, Lamb, Leiby & MacRae, Salt Lake City, UT, for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

1. The order was that of the district court and was signed by both the district and bankruptcy judges. When we refer to the district court, it may have been the district court sitting in bankruptcy.

## OPINION

PER CURIAM:

This appeal on behalf of certain Dalkon Shield claimants (the Anderson claimants) challenges two provisions of Administrative Order No. 1 dated June 26, 1991, as amended July 1, 1991. Also, there intervened in this appeal certain other of the Dalkon Shield claimants who challenged an additional provision (the intervenors). We affirm in all respects the said order which was entered by the district and bankruptcy judges in the administration of the trust,[1] but we require a slight modification thereto.

Briefly stated, the challenges made here are to what is called the certification provision of the order; the holdback provision of the order; and the provisions of the order enforcing the rules of arbitration. Notice of some two months was given of the hearing on the motion of the trust requesting the order.

We mention initially that the district court retains supervisory powers over the administration of the trust created in this case, not only as a matter of law, but also under Section 8.05 of the Plan is included the authority to enter orders in aid of the Plan, the Trust Agreements, and the Claims Resolution Facility as well as the authority to resolve controversies and disputes regarding interpretation and implementation of the Plan, the Trust Agreements and the Claims Resolution Facility.[2] The court, however, under Section 8.05, is not intended to monitor the day-to-day operations of the Trust or the Claims Resolution Facility.

### I.

■ That part of the order complained of as it relates to the certifying provision provides as follows:

2. No Claimant shall commence Arbitration or shall commence or recommence Litigation until this Court has certified by entry of an order, upon the application of the Trust, that: (i) the claims review pro-

2. One of the principal documents involved here is called Claims Resolution Facility.

cess respecting the applicable Dalkon Shield Personal Injury Claim has been completed in accordance with the Claims Resolution Facility ("CRF"),....

Exhibit C to the Plan, the Claims Resolution Facility document, provides in Section E.4 the pertinent provisions for processing claims. The provisions for processing claims resulting in arbitration or litigation are that after an in-depth review of the claim by the Trust, a "voluntary settlement conference or any other voluntary alternative dispute resolution process" will be consummated and then:

If a settlement is not sooner reached, not later than 60 days after the conference, both parties must submit to the other a written settlement proposal which shall remain in effect until 90 days after the conference. If neither party accepts the other's offer during this period, the claim may proceed to arbitration or trial. Section E.4.

And in Section E.5 of the same document is the following provision:

If a settlement is not reached at the settlement conference level and the claimant has completed the preceding procedures under Option 3 [those just mentioned in this opinion], the claimant shall elect either Binding Arbitration or a trial. A claimant may elect to go to binding arbitration or trial only after having applied for and received a response from the Trust to the preceding level of this Option 3.

The Anderson claimants take the position that the order complained of adds to these provisions that neither arbitration nor litigation may be proceeded with by a claimant until the court "has certified by entry of an order, upon the application of the Trust, that ... [the claims review process under the CRF has been completed]." They argue that the additional requirement of the Trust applying for certification from the court is not included in the Claims Resolution Facility provision under the Plan. The argument goes that the Trust may delay applying for the certificate, thus delaying the processing of their claims.

Because we think the provisions of the order complained of are within the general supervisory powers of the court, and are rather innocuous, we are not disposed to require the revocation of the same. We do require, however, that the order complained of be amended to include a provision that after the 90 day period mentioned in Section E.4 which we have quoted above, the Trust, on application of a claimant, shall forthwith certify to the court that "the claimant has completed the preceding procedures under Option 3." Section E.5. Whereupon, upon receipt of such certificate from the Trust, except for good cause shown, the district court will forthwith enter the order of certification mentioned in paragraph 2 of its order of July 1, 1991.

## II.

■ The next provision of the order of July 1st complained of is what is known as the holdback provision. Paragraph 13 of the order provides in pertinent part that

... in order to assure the continued availability of funds to pay all valid Dalkon Shield Personal Injury Claims, and in order to further the other proper purposes of the Plan, Trust and CRF, in satisfaction of all awards and judgments ... obtained as a result of Arbitration or Litigation, the Trust shall:

a. pay initially only that portion of such an award or judgment which does not exceed the greater of $10,000.00 or the final settlement offer made by the Trust under Option 3, Section E.4 of the CRF;

. . . .

The complaint of the Anderson claimants is that there is no basis for any holdback and the one approved by the district court is improper. "The gravamen of both objections is that only those claimants who successfully litigate will receive less money because of the holdback than they would have received without it." Brief p. 21. They insist that because of the holdback and an assumption that there is not enough money to go around, an arbitrating or litigating claimant who received only a part of her award, presently $10,000, or the last offer, is bound to receive a lower

percentage of her claim than those who have settled. The intervenors' opposition relies on a different fact situation. They assume that all the claims will be paid in full and so there is no reason for any holdback. Brief p. 32.

The tenor of the briefs is what is claimed to be an unfairness on the part of the Trust in holding back any part of a judgment or an award and the overtone is that only because there is nothing new about the provision, no surprise is claimed.

Provisions for a holdback such as was entered by the district court have been in the case at least since the circulation of the disclosure statement on March 28, 1988. The Special Note To Women Who Use The Dalkon Shield provides on page 4 that because of the risk that there is not enough money to pay all the actual value of all the claims, the "Trustees of the Claimants Trust may decide to delay payment of a portion of the awards made under the Claims Resolution Facility. In that case, you might not be paid for this delay in the payment of your claim." That the "Trustees will determine the time and manner in which you are paid from the Trust" is also mentioned on page 6 of the same document, as is the fact that the Trustees may "pay some claims earlier than others, for reasons of hardship, necessity or major efficiency" on page 7 thereof. In Section G.3 of the Claims Resolution Facility document is specific authorization for the holdback complained of:

> While it is intended that each claimant receive a substantial portion of his or her award immediately upon the determination of her or his claim, the Trustees may withhold some portion of the amounts awarded under Option 3 [an award or judgment] for claims and pay the balance withheld at such times and in such amounts as necessary to ensure equality in distribution among claimants and the continued availability of funds to pay all valid non-subordinated claims.

Except for the placing of a dollar amount on the holdback provision, there is nothing of consequence in the order complained of which was not there when the Plan and Claims Resolution Facility was adopted in 1988, and it is worth mentioning that no appeal from the provision now complained of was taken at the time. Indeed, in *In re: A. H. Robins, Inc.*, 880 F.2d 694 (4th Cir.1989), we pointed out that everyone knew that there might not be enough money to cover all claims, and there has been no decision since that the funds available will cover all claims. Thus, we see that in the event of a shortfall of funds any holdback was bound to result in a disproportionate distribution of funds, and except for the $10,000 item, there is no difference in the Plan as now implemented by the order of July 1, 1991, and the Plan and CRF adopted in 1988. In this connection, we note that the $10,000 item has not been in effect since September, 1993. On September 1, 1993, the minimum payment was elevated from $10,000 to $25,000 and on February 16, 1994, the $25,000 payment was increased to $75,000 which was increased to $175,000 on September 15, 1994. So all final judgments not exceeding $175,000 have been paid.

The district court is not to monitor the day-to-day operation of the Trust, and the Trustees are specifically authorized in the CRF provisions to hold back a part of the payments under the Plan in order to ensure both equality in distribution and the continued availability of funds to pay all valid subordinated claims. We think the district court's order requiring the $10,000 withholding is within its supervisory powers over the administration of the Trust and the fact that the Trust has increased the payments to $175,000 is a substantial indication that it is making a *bona fide* effort to ensure both equality of distribution and the retention of enough funds to pay all valid non-subordinated claims.

That one of these goals may be contradictory of the other is a given. But that has been known from the outset. There has been no evidence offered to show that the Trustees abused their discretion in placing in effect a holdback which had been authorized from the inception of the CRF. Merely arguing that the two provisions of the CRF Section G.3 are contradictory does not suffice to show an abuse of discretion. The claimants have had ample opportunity to introduce facts which might tend to support their posi-

tion and have produced none.[3] The finding of the district court that both the expenses of administration and balance of payments remained uncertain stands unrefuted.

We are thus of opinion that the holdback provisions of the order are not erroneous.

### III.

■ The last point urged upon us in this appeal is by the intervenors who contest the provisions of the order of July 1st with respect to arbitration. In particular they argue that the arbitration rules promulgated by the Trust with respect to application of the law of Virginia and a period of limitations of three years with a discovery rule are invalid. They also argue as erroneous the district court's exclusion of the evidence of a social scientist who would have testified with respect "to the likely outcomes of various common-sense approaches to the Dalkon Shield claims resolution" and with respect to "the appropriate structure of a program of alternate dispute resolutions which will be both fair to all concerned and to achieve the goals of the Plan." Brief, p. 26.

Like the provisions with respect to certification and holdback, the arbitration provisions were not new. They are mentioned no later than the March 28, 1988 disclosure statement, in the Special Note To Women Who Use The Dalkon Shield on page 6, and in the Claims Resolution Facility document under Section E, Option 3 in more detail on pages 2, 3 and 4. CRF Section E.5(a) has for a catch line *"Binding Arbitration"* and describes the choosing of a panel of arbitrators, the length of their services, the location of the hearing, provisions with respect to the record and evidence and representation at the hearing. Also there are contained in that section rules with respect to an agreed award. The section concludes with this sentence:

3. We do not rely upon any advice the district court may have received with respect to this question which was not available to these claimants.

4. The district court's decision would even have satisfied both Alice and the Hatter:
   "Take some more tea," the March Hare said to Alice, very earnestly.

The trustees shall develop such further rules concerning arbitration as ·they may deem appropriate.

The district court correctly held that under the CRF "the sole responsibility for the promulgation of arbitration rules rests with the Trustees." That is the only fair reading which could be given to the language we have just quoted.[4] We are not dealing with any complicated language and we are not impressed that any play on words from other parts of the CRF has weakened the authority of the Trustees to promulgate rules with respect to arbitration. We find that the rules which were promulgated are "further rules concerning arbitration," precisely in the words of the CRF, Section E.5(a). In that respect, we reject the argument of the intervenors that Section G.11 of the CRF with respect to "settlement or trial" is equated to arbitration. Indeed, arbitration ordinarily implies the absence of both settlement and trial.

The Trustees promulgated their rules concerning regular arbitration April 21, 1991. Rule H provides that "[t]he arbitrator shall apply the substantive laws of the Commonwealth of Virginia in deciding the issues of the case, regardless of where the arbitration hearing occurs."

Rule I provides for a three year period of limitations from the date the cause of action accrues, and also provides that the cause of action accrues when the claimant discovers or reasonably should have discovered her injury, and that the injury may have been caused by the Dalkon Shield.

The objections the intervenors make to these two rules are that the substantive law of Virginia is less favorable to claimants than other law which might have been used, and that the limitations period promulgated is

"I have had nothing yet," Alice replied in an offended tone: "so I ca'n't take more."
   "You mean you ca'n't take *less*," said the Hatter: "it's very easy to take *more* than nothing."
*Alice's Adventures in Wonderland*, Random House Special Edition, 1946, p. 84.

less favorable to claimants than others which might have been used.

The district court found, basing its finding on the argument of the Trust, that the limitation rules adopted by the Trust were more favorable than those in 40 States. It found that at the time of the hearing, the argument of the Trust was without refutation. The intervenors now argue that, since the hearing, their research has revealed that in some respects with regard to knowledge, the rule as promulgated is less favorable to claimants in 35 States than the rule which the Trust had placed in effect. Even if both the statements of the district court and the intervenors in the brief are correct, which may be likely, that does not serve to disturb the holding of the district court.

■ "Trust principles make a deferential standard of review appropriate when a Trustee exercises discretionary powers. See *Restatement (Second) of Trusts*, § 187 (1959) ('Where discretion is conferred upon the Trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion.')." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). We are not concerned except *in extremis* with whether or not there exist standards more favorable to the intervenors or more favorable to the Trust in the substantive law of other States than Virginia, or periods of limitation more favorable to the Trust or to the intervenors than those promulgated in Rule I mentioned above. The question is simply whether the Trustees have abused their discretion by adopting the rules with respect to substantive law and period of limitation we have mentioned. No such abuse has been shown, and we do not think that either the substantive law of Virginia or the rule as to a period of limitations imposed by Rule I is an extreme case at all, much less so extreme so as to warrant a finding that its imposition would constitute an abuse of discretion. Indeed, the opposite is true, and in the face of no evidence in the record to the contrary, we have concluded that the district court was correct in its decision.

With respect to the evidence of the social scientist which the district court excluded, much the same reasoning supports its decision. The question is not whether there is another reasonable plan for the distribution of assets of this estate or whether there is a plan for the distribution of the assets of this estate which is more liberally inclined toward some of the claimants, the question here is whether these rules constitute an abuse of discretion and the testimony of the social scientist would not have tended to show any such abuse.

## IV.

■ We must not forget that the order which we are reviewing is an order with respect to the administration of a trust established in the administration of a bankrupt estate, and is not the ordinary order which has ended contested litigation in a completely adversarial setting. It is in that context that we are especially aware of the considerable deference due to the district court in the exercise of its supervisory powers. See *In re: A. H. Robins, Co., Inc.*, 880 F.2d 769 (4th Cir.1989); *In re: A. H. Robins, Co., Inc.*, 880 F.2d 694 (4th Cir.1989). In the same vein, is the principle that there is no common law of arbitration. "Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure the arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate [citation omitted], so too may they specify by contract the rules under which that arbitration may be conducted." *Volt Info. Sciences v. Leland Stanford Jr. U.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989). The Plan and the Claims Resolution Facility document are contractual documents although they were also adopted by the district court and imposed as a part of the Plan of reorganization of A. H. Robins Co. In our decision today, we give effect to the district court's order in that setting.

The order of the district court appealed from is accordingly

*AFFIRMED AS MODIFIED.*