**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: A. H. ROBINS COMPANY,
INCORPORATED,
<u>Debtor.</u>

C. F. ANDERSON COMPANY,
INCORPORATED,
<u>Claimant-Appellant,</u>

v.                                                                    No. 96-1007

DALKON SHIELD OTHER CLAIMANTS
TRUST,
<u>Trust-Appellee.</u>

DALKON SHIELD CLAIMANTS TRUST,
<u>Amicus Curiae.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CA-85-1307-R)

Argued: September 26, 1996

Decided: November 12, 1996

Before RUSSELL and MICHAEL, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Ray Baldwin, III, HIRSCHLER, FLEISCHER, WEINBERG, COX & ALLEN, Richmond, Virginia, for Appellant. Orran Lee Brown, Sr., Richmond, Virginia, for Appellee. **ON BRIEF:** Melody G. Foster, Richmond, Virginia, for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The district court and bankruptcy court, sitting together, disallowed certain contingent and unliquidated claims that had been assumed by one of the trusts created to effect A. H. Robins Company, Inc.'s (Robins') Plan of Reorganization.**1** One of the claimants, C. F. Anderson Company, Inc. (Anderson) appeals, and we affirm.

I.

This is another appeal in the case in which Robins (the Debtor) went into Chapter 11 bankruptcy because of claims relating to the Dalkon Shield device, a product manufactured by Robins. Claims against Robins were divided into two categories pursuant to the Plan of Reorganization affirmed by this court in In re A.H. Robins Company, Inc., 880 F.2d 694 (4th Cir.), cert. denied, 493 U.S. 959 (1989). The Dalkon Shield Claimants Trust (Claimants Trust) handles all personal injury claims (that would have been asserted against Robins) arising from the use of the Dalkon Shield. The Dalkon Shield Other

_____

**1** When the district court and bankruptcy court sat together or entered joint orders, we refer to them as "the district court" or "the court."

2

Claimants Trust (Other Claimants Trust or Trust), the appellee in this case, handles most other claims, as we explain next. **2**

Anderson, a Dalkon Shield distributor, was a co-defendant with Robins in various cases pending when Robins filed for Chapter 11 reorganization. Anderson thus held a contingent claim against Robins for indemnification or contribution. The Sixth Amended and Restated Plan of Reorganization (the Plan) established the Other Claimants Trust for the purpose of assuming and processing third-party claims for contribution or indemnity by doctors, hospitals, health care professionals, corporate employees, and suppliers and distributors like Anderson. See Plan ¶ 1.63 (defining "Other Claimant").**3** Anderson's claim was assumed by the Other Claimants Trust when the Plan was confirmed on July 26, 1988.

On August 29, 1990, the trustees filed their First Omnibus Objection to the contingent and unliquidated claims assumed by the Other Claimants Trust on the grounds that § 502(e)(1)(B) of the Bankruptcy Code requires disallowance of contingent claims. See First Omnibus Objection to Dalkon Shield Other Claims ¶ 8 (asserting that "[to] date, no entity with a Contingent Claim has informed the Trust of Facts supporting an actual, noncontingent claim for contribution, reimbursement or indemnification."). See also Other Claimants Trust ¶ 4.03(b)(iii) (stating that the trustees have the power to "compromise,

_____

**2** There is also a third trust, which handles the claims of personal injury claimants who missed the April 30, 1996, bar date.

**3** Specifically, the Other Claimants Trust Agreement (Trust Agreement), in Paragraph 2.02(b)(i), assumed a broad set of claims, including all liabilities "present or future (including, without limitation, liabilities and obligations for contribution to and indemnification of all Other Claimants), whether liquidated or non-liquidated, contingent or non-contingent, asserted or unasserted . . . ." This definition substantively mirrors the definition of "Claim" in the Plan, which incorporates the definition of claim in the Bankruptcy Code. The Bankruptcy Code defines claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5). The Other Claimants Trust thus assumed all potential third-party claims against Robins.

3

adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle all Dalkon Shield Other Claims . . . ."). The district court overruled the objection without prejudice on March 5, 1991. On January 30, 1992, the bankruptcy court entered an order allowing the Trust to renew its objection. The bankruptcy court held a hearing on the renewed objection on March 2, 1992, and took the matter under advisement.

On September 15, 1995, the district court held another hearing on the pending objection by the Trust. As to Anderson in particular, the trustees reemphasized that Anderson's claim remains contingent and that no one is in fact threatening Dalkon Shield-related legal action against Anderson. This time, the court agreed with the trustees and on November 28, 1995, entered an order disallowing the claims on the grounds that "the claims referenced in [the objections] are claims for reimbursement or contributions that presently are contingent and unliquidated and therefore are subject to disallowance at the time of objection pursuant to 11 U.S.C. § 502(e)(1)(B)." Anderson appeals.

II.

The main issue is whether the district court has the power to disallow Anderson's claim on the grounds asserted by the trustees. The trustees press for disallowance because Anderson's claim has remained contingent for the entire eight-year existence of the Trust, and no legal action is being threatened against Anderson. We believe that the district court has the power to disallow the claim.

Under the Plan the district court retained jurisdiction over a wide variety of matters. Paragraph 8.05 of the Plan states:

> Notwithstanding entry of the Confirmation Order . . . the Court will retain jurisdiction . . . (c) to resolve controversies and disputes regarding interpretation and implementation of the Plan, the Trust Agreements, . . . and amendments of the Trust Agreements . . . (d) to enter orders in aid of the Plan [and] the Trust Agreements . . . .

The court's express retention of jurisdiction is entirely appropriate. See Goodman v. Phillip R. Curtis Enterprises, 809 F.2d 228, 232 (4th

4

Cir. 1987) (noting that 11 U.S.C. § 1142(a) grants authority for plan implementation); In re Dilbert's Quality Supermarkets, Inc., 268 F.2d 922, 924 (2d Cir. 1966) (holding that court did not abuse its discretion by passing on validity of lease and mortgage claims after confirmation date under retained jurisdiction). See generally 5 Collier on Bankruptcy ¶ 1142.01 at 1142-5 (15th ed. 1986) (describing broad powers of court under retained jurisdiction).

Anderson argues that, even though the district court has continuing jurisdiction, it erred in relying on § 502(e)(1)(B) to disallow Anderson's claim.[4] Anderson says that§ 502(e) drops out of the picture because the Plan and Trust Agreement require the Trust to assume contingent and unliquidated claims.[5]

Indeed, the Plan did intend for the Other Claimants Trust to assume contingent claims despite § 502(e). The Trust Agreement gives the trustees the power to pay such claims, once they become fixed, if the trustees or a court deems them valid. See Other Claimants Trust Agreement ¶ 5.02(a). But nothing in the Plan or Trust Agreement prevents the trustees from raising an objection to claims or prohibits the district court from disallowing claims. Nor does anything in the Plan or Trust Agreement limit the grounds on which the trustees or the court may disallow claims. Therefore, we believe that under the broad authority retained by the district court, it could rely on § 502(e) to disallow claims.

We turn now to whether the district court was correct in disallowing Anderson's claim at this juncture. Anderson wants continuing

_____

[4] Section 502(e)(1) states:

> . . . the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that--

> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . .

11 U.S.C. § 502(e)(1).

[5] Paragraph 5.02 of the Plan incorporates the Other Claimants Trust Agreement.

protection throughout the life of the Trust, which could extend until December 31, 2008. The trustees objected to Anderson's claim in 1990, two years after the Trust was established. The district court, however, has been very cautious. Until very recently, the court refused to disallow the claim, thus giving Anderson an extra five years of protection in the event a claim against Anderson materialized. None did, and Anderson has offered no evidence to indicate that any ever will. There is no longer any justification for keeping Anderson's contingent claim open. Accordingly, the court did not err in disallowing Anderson's claim.

The order of the district court is affirmed.

AFFIRMED

6